IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NORTHEASTERN DIVISION

| | |
|---|---|
| VICKY LYNN CAVAZOS ) | |
| ) | |
| v. ) | No. 2:09-0112 |
| ) | Judge Nixon/Bryant |
| SOCIAL SECURITY ADMINISTRATION ) | |

To:   The Honorable John T. Nixon, Senior Judge

## REPORT AND RECOMMENDATION

This is a civil action filed pursuant to 42 U.S.C. §§ 405(g) and 1383(c), to obtain judicial review of the final decision of the Social Security Administration ("SSA" or "the Administration"), through its Commissioner, denying plaintiff's application for disability insurance benefits ("DIB") and supplemental security income ("SSI"), as provided under the Social Security Act. The case is currently pending on plaintiff's motion for judgment on the administrative record (Docket Entry No. 17), to which defendant has responded (Docket Entry No. 23). Upon consideration of these papers and the transcript of the administrative record (Docket Entry No. 12),[1] and for the reasons given below, the undersigned recommends that plaintiff's motion for judgment be DENIED, and that the decision of the SSA be AFFIRMED.

### I. Procedural History

Plaintiff filed her DIB and SSI applications on July 17, 2006, alleging the onset

---

[1] Referenced hereinafter by page number(s) following the abbreviation "Tr."

of disability as of November 15, 2005. After initial agency denials, plaintiff requested de novo review of her claim by an Administrative Law Judge ("ALJ"). On February 12, 2009, the ALJ held a hearing on plaintiff's claim, and testimony was received from plaintiff and from an impartial vocational expert. (Tr. 22-47) Plaintiff was represented by counsel at the hearing, and at that time formally amended her alleged onset date to September 30, 2007. (Tr. 25) After hearing the testimony, the ALJ took the matter under advisement until April 29, 2009, when she issued a written decision denying plaintiff's claim to benefits. (Tr. 12-21) That decision contains the following enumerated findings:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2011.

2. The claimant has not engaged in substantial gainful activity since September 30, 2007, the amended alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3. The claimant has the following combination of severe impairments: history of headaches; degenerative disc disease of the cervical spine at C5-6; mild degenerative changes of the lumbar spine with osteopenia at L3; depressive disorder not otherwise specified; anxiety disorder not otherwise specified; chronic obstructive pulmonary disease; and cigarette abuse against medical advice (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1525, 404.1526, 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except that she is limited to a total of four hours of standing in an eight-hour workday. She has no limitation on the ability to sit, but requires the flexibility to sit or stand after a continuous 30 minutes. She is limited to pulling up to 10 pounds with her arms, and up to 20 pounds with the lower extremities. She requires the ability to sit and stand at

2

will after 30 minutes. Despite mental diagnoses she is able to acquire information, make simple work-related judgments, and get along with others in a work setting.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on August 24, 1961 and was 46 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date. (20 CFR 404.1563 and 416.963).

8. The claimant has a limited education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569a, 416.969, and 416.969a).

11. The claimant has not been under a disability, as defined in the Social Security Act, from September 30, 2007 through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 14-16, 19-21)

On November 5, 2009, the Appeals Council denied plaintiff's request for review of the ALJ's decision (Tr. 1-5), thereby rendering that decision the final decision of the Administration. This civil action was thereafter timely filed, and the court has jurisdiction. 42 U.S.C. §§ 405(g), 1383(c)(3). If the ALJ's findings are supported by substantial evidence, based on the record as a whole, then those findings are conclusive. Id.

## II. Review of the Record

The following is taken from the 'Statement of Facts' within defendant's brief (Docket Entry No. 23 at 2-5), with some minor modification by the undersigned.

The ALJ found that Ms. Cavazos had severe impairments including: headaches, degenerative disc disease of the cervical spine at C5-6, mild degenerative changes of the lumbar spine with osteopenia at L3, depressive and anxiety disorders not otherwise specified, chronic obstructive pulmonary disease, and cigarette abuse against medical advice (Tr. 14). There are indications in the record that Ms. Cavazos alleged pain of eight on a scale of ten with inflexibility and restricted movements; she further alleged that "something's not right" regarding her right knee and lower back pain (Tr. 244); and she described her depression as a nine out of ten (Tr. 274).

As the ALJ noted (Tr. 17-18), the claimant had "some bony hypertrophy" at C5-6 (Tr. 378), but opinions differed as to findings of nerve impingement or canal stenosis. While radiologist George Mead assessed secondary spinal stenosis at C5-6 (Tr. 215), consulting neurosurgeon Joseph Jestus, M.D., interpreted the MRI as indicating minimal stenosis at C5-6, with no significant nerve root impingement (Tr. 211). Dr. Jestus thought the source of her cervical pain was arthritic and believed surgery was not called for (Tr. 212). Dr. Jestus stated that Ms. Cavazos had "good days and bad days" (Tr. 212). Radiography of the lumbar spine in December 2005 as well as MRI studies in 2008 documented "Fairly minimal degenerative changes" without spondylosis, spondylolisthesis, canal stenosis, or nerve root impingement (Tr. 378-79; 343, 344).

Ms. Cavazos was seen throughout 2005 and 2006 by Samantha McLerran,

M.D., at the Livingston clinic (Tr. 226-71, 276-84). Dr. McLerran's notes are indicative of continued complaints about the above mentioned impairments, and continued treatment. Dr. McLerran's notes indicate that she treated Ms. Cavazos for anxiety as well as pain allegations. On June 27, 2006, it was noted that Ms. Cavazos's anxiety was related to her alleged chest pain, etc. (Tr. 220). She was prescribed Wellbutrin, which she was on throughout these records. As early as November 4, 2005, it was noted that Ms. Cavazos was doing better on the Wellbutrin (Tr. 248). There was no indication of an anxiety breakdown.

While Dr. McLerran did not give an opinion about Ms. Cavazos's abilities, Michael Cox, M.D., an associate of Dr. McLerran, did a consultative examination and opinion for the Commissioner (Tr. 303-06). It was noted on examination that Ms. Cavazos's strength was intact, she was able to stand on her toes and stand on her heels, she was able to balance on either foot, she could squat and raise up with minimal difficulty, straight leg raising test was negative both in the lying an seated positions bilaterally, and she did not have any reduction in her range of motion in all joints which were tested (Tr. 305). While these results suggest no significant limitation, Dr. Cox, who also reviewed Ms. Cavazos's medical history including MRIs, concluded that Ms. Cavazos was limited to lifting ten pounds frequently and 20 pounds occasionally; she could stand for four hours in an eight-hour workday with a break period of every 30 minutes; she could sit eight hours in an eight-hour workday with a break every 30 minutes; she was able to use her upper and lower extremities in a repetitive fashion, she could push or pull up to 10 pounds with the upper extremities and up to 20 pounds with the lower extremities; and she had no limitations in hearing and vision, and she had no environmental restrictions (Tr. 306).

Regarding Ms. Cavazos's alleged mental impairment, the ALJ relied on an

5

extensive consultative examination by Mark Loftis, M.D. (Tr. 272-75). Dr. Loftis noted that Ms. Cavazos's operated her own household including complete care of her son, did housework, took laundry to the Laundromat weekly, did her own grocery shopping, cooked twice daily for her 14-year-old son, shopped, drove, managed her own finances, and read for enjoyment (Tr. 273). Dr. Loftis noted after examination that Ms. Cavazos appeared to have significant depressive symptoms (Tr. 274). He opined, however, that Ms. Cavazos cognitively was capable of learning and acquiring information, and she was able to use that information appropriately in a work setting (Tr. 275). Dr. Loftis opined that Ms. Cavazos could get along with other people in the work setting, but that she would have a tendency to decompensate if put in a very stressful work situation (Tr. 275).

Ms. Cavazos was hospitalized for 11 days in December 2008. When she was discharged on December 20, 2008, it was noted that she was in stable condition (Tr. 396); she had a diagnosis of pneumonia, sepsis (resolved), and respiratory failure (resolved) (Tr. 395). Ms. Cavazos had been treated for renal failure, also resolved, and metabolic acidosis secondary to diarrhea (Tr. 395).

Dr. Vijaya Patibandla, presumably at the request of Ms. Cavazos's counsel, filled out a Medical Assessment of Ability to do Work-Related Activities form (Tr. 374-76). Dr. Patibandla opined that Ms. Cavazos was limited to sitting for three hours in an eight-hour workday, one hour uninterrupted (Tr. 375). He also opined that Ms. Cavazos was limited to two hours standing a day, one hour without interruption because of "restricted spine movements" (Tr. 374). However, Dr. Patibandla did not indicate that Ms. Cavazos had any limitations in climbing, stooping, kneeling, balancing, crouching, and crawling (Tr. 375). He further opined that Ms. Cavazos had no limitations in reaching, handling, feeling,

6

pushing and pulling, seeing, hearing and speaking, and she had no environmental limitations (Tr. 375-76)

The ALJ summarized plaintiff's hearing testimony as follows:

> She testified that she is 47 years old, and has an 11th grade education (although the undersigned notes that in her disability report she stated that she had one year of college). She testified that she had a stroke in December 2008 that left her left side weakened, and is currently using a wheelchair that was prescribed. She is right handed. In September 2007 she had back pain for which nothing could be done. The pain would shoot down her legs, she would lose her balance, her feet would swell, and her hands would tingle. In 2007, before her stroke, she was limited to carrying 10 to 15 pounds, [and] could stand long enough to use a microwave and wash dishes. Her mother helped with grocery shopping, and she did laundry and other household chores a little at a time, with rest periods. She was taking injections for the pain which did not help, and stress increased the pain levels. Her medications provided pain relief for several hours, and then she used heat and cold packs. Lying down was the only thing that provided pain relief. She has taken medication for depression and anxiety, but is having panic attacks because the bills are piled up. She feels short of breath and takes medication for the feelings of panic. Her mother is living with her because she has memory deficits and is not thinking well, her vision is blurred, she falls, and cannot drive. She has gone to Plateau Mental Health for mental issues. She is wearing blood pressure patches and using oxygen.

(Tr. 17)

### III. Conclusions of Law

#### A. Standard of Review

This court reviews the final decision of the SSA to determine whether that agency's findings of fact are supported by substantial evidence in the record and whether the correct legal standards were applied. Elam ex rel. Golay v. Comm'r of Soc. Sec., 348 F.3d 124, 125 (6th Cir. 2003). "Substantial evidence is defined as 'more than a scintilla of evidence

but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Rogers v. Comm'r of Soc. Sec., 486 F.3d 234, 241 (6th Cir. 2007)(quoting Cutlip v. Sec'y of Health & Human Servs., 25 F.3d 284, 286 (6th Cir. 1994)). Even if the evidence could also support a different conclusion, the SSA's decision must stand if substantial evidence supports the conclusion reached. Her v. Comm'r of Soc. Sec., 203 F.3d 388, 389 (6th Cir. 1999).

## B. Proceedings at the Administrative Level

The claimant has the ultimate burden to establish an entitlement to benefits by proving his or her "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The claimant's "physical or mental impairment" must "result[] from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." Id. at § 423(d)(3). In proceedings before the SSA, the claimant's case is considered under a five-step sequential evaluation process, described by the Sixth Circuit Court of Appeals as follows:

> 1) A claimant who is engaging in substantial gainful activity will not be found to be disabled regardless of medical findings.
> 2) A claimant who does not have a severe impairment will not be found to be disabled.
> 3) A finding of disability will be made without consideration of vocational factors, if a claimant is not working and is suffering from a severe impairment which meets the duration requirement and which meets or equals a listed impairment in Appendix 1 to Subpart P of the Regulations. Claimants with lesser impairments proceed to step four.
> 4) A claimant who can perform work that he has done in the past will not be

> found to be disabled.
>
> 5) If a claimant cannot perform his past work, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed.

Cruse v. Comm'r of Soc. Sec., 502 F.3d 532, 539 (6th Cir. 2007)(citing, e.g., Combs v. Comm'r of Soc. Sec., 459 F.3d 640, 642-43 (6th Cir. 2006)(en banc)); 20 C.F.R. §§ 404.1520(b)-(f), 416.920 (b)-(f).

The SSA's burden at the fifth step of the evaluation process can be carried by relying on the medical-vocational guidelines, otherwise known as "the grids," but only if the claimant is not significantly limited by a nonexertional impairment, and then only when the claimant's characteristics identically match the characteristics of the applicable grid rule. See Wright v. Massanari, 321 F.3d 611, 615-16 (6th Cir. 2003). Otherwise, the grids cannot be used to direct a conclusion, but only as a guide to the disability determination. Id.; see also Moon v. Sullivan, 923 F.2d 1175, 1181 (6th Cir. 1990). In such cases where the grids do not direct a conclusion as to the claimant's disability, the SSA must rebut the claimant's *prima facie* case by coming forward with proof of the claimant's individual vocational qualifications to perform specific jobs, which is typically obtained through vocational expert ("VE") testimony. See Wright, 321 F.3d at 616 (quoting Soc. Sec. Rul. 83-12, 1983 WL 31253, *4 (S.S.A.)); see also Varley v. Sec'y of Health & Human Servs., 820 F.2d 777, 779 (6th Cir. 1987).

In determining residual functional capacity ("RFC") for purposes of the analysis required at steps four and five above, the SSA is required to consider the combined effect of all the claimant's impairments, mental and physical, exertional and nonexertional, severe and nonsevere. See 42 U.S.C. §§ 423(d)(2)(B), (5)(B); Foster v. Bowen, 853 F.2d 483,

490 (6th Cir. 1988).

### C. Plaintiff's Statement of Errors

Plaintiff argues that the ALJ erred in giving no weight to the opinion of her treating physician, Dr. Patibandla, and in failing to appreciate the import of the assessments of treating neurologist Dr. Jestus, and of the consultative examiner, Dr. Cox. She further argues that Dr. Cox's opinion (as she interprets it) should have been given controlling weight, and that her subjective complaints of pain should have been credited in light of the objective medical evidence in support. She further states that the ALJ failed to make mention of several facts in evidence, though these omissions are not tied to any specific grounds for reversal of the ALJ's decision. As further explained below, the undersigned finds no merit in any asserted ground for reversal, and concludes that substantial evidence supports the ALJ's decision to deny benefits.

Regarding the assessment of Dr. Patibandla, indicating that plaintiff is limited by tenderness and spasm in her lumbosacral spine to the point that she is unable to sit and stand in combination for a full eight hours (Tr. 374-76), the undersigned finds that the ALJ properly dismissed the assessment upon the grounds stated in her decision (Tr. 18, 19), *i.e.*, that it inconsistently assessed these postural limitations but no limitations on lifting and carrying, and that it was offered without any office notes or other evidence that Dr. Patibandla treated or even examined plaintiff, other than one x-ray series ordered by Dr. Patibandla on October 23, 2008, revealing degenerative disc disease of the *cervical* spine without stenosis or nerve root impingement, and otherwise minimal or unremarkable findings at other spinal levels. (Tr. 377-79) Even if Dr. Patibandla should have properly

10

been regarded as a treating physician despite the lack of proof of any treatment history, the ALJ gave good reasons for rejecting the physician's assessment.

With respect to the consultative examination and assessment by Dr. Cox in October 2006,[2] plaintiff argues that the ALJ misconstrued that assessment as one indicating "the capacity to perform light exertion with a sit/stand option, and standing limited to four hours in a workday" (Tr. 18), when Dr. Cox specifically stated that plaintiff can "stand for four hours in an eight-hour workday with a break period every 30 minutes[, and] can sit eight hours in an eight-hour workday with a break period of every 30 minutes." (Tr. 306) Plaintiff argues that Dr. Cox's assessment of these postural restrictions should be read to require a break from work every thirty minutes, rather than just a change in position. However, while Dr. Cox's use of the term "break period" is not the model of clarity, the reading that plaintiff urges is inconsistent with both the assessment of her capacity to sit for eight out of eight hours, and with the benign findings recorded from Dr. Cox's physical examination of plaintiff. Reviewing these results, the ALJ noted that plaintiff's "motor and sensory exams were normal, her strength was intact, she was able to heel-toe walk, balance on either foot, and perform a full squat." (Tr. 18, 305) Furthermore, "[h]er straight leg raise test was negative, and she had full range of motion in all joints, which were free of warmth,

---

[2]Because Dr. Cox is in practice with treating physician Dr. McLerran, and so had access to plaintiff's record of treatment with Dr. McLerran as a backdrop to his consultative examination, the government labels Dr. Cox "a 'super' physician for purposes of considering the Commissioner's regulations in regard to this claimant." (Docket Entry No. 23 at 11 n.8, 13) However, there is no such category of physician recognized in the Commissioner's regulations, 20 C.F.R. §§ 404.1527(d), 416.927(d), nor does Dr. Cox's report indicate that he consulted Dr. McLerran in forming his opinion, or otherwise placed stock in any evidence of plaintiff's condition outside of that obtained during his own examination of her. (Tr. 306)

11

synovitis, or effusion." Id. Finally, Dr. Cox's clinical impressions were "that spinal stenosis was not borne out by the medical records he reviewed, that she had generalized arthralgia presumably due to osteoarthritis, and that she had an anxiety disorder[.]" (Tr. 18, 306) In light of these examination results and the consultative report as a whole, the undersigned finds that the ALJ properly construed Dr. Cox's assessment as indicating the capacity for light exertional work so long as a sit/stand option is available.

Regarding the opinion of Dr. Jestus that plaintiff could expect to have good days and bad days with her chronic neck pain (Tr. 212), the ALJ properly considered this truism along with the remainder of Dr. Jestus' neurosurgical consultation note, which referenced the MRI evidence of "very minimal spinal stenosis at C5/6" without nerve root impingement. (Tr. 211) Dr. Jestus confirmed that plaintiff was not a surgical candidate, but must manage the symptoms of her cervical degenerative disc disease with medications. (Tr. 211-13) The fact that such symptomatic treatment results in good and bad days does not undermine the finding implicit in the ALJ's determination of plaintiff's credibility and RFC, that such bad days are either not bad enough or not frequent enough, or both, to preclude work on a regular and continuing basis.

Plaintiff further argues that the ALJ failed to consider that she was confined to a wheelchair at the time of her hearing, or that the respiratory and other issues that required her hospitalization in December 2008 had not resolved as of January 2009. However, the ALJ merely quoted the discharge summary of December 20, 2008 in recounting that plaintiff's sepsis, respiratory failure, and renal failure had resolved by that date. (Tr. 18-19, 395) The ALJ noted that plaintiff was again seen at the hospital on January 28, 2009, where

she was diagnosed with pneumonia and an acute exacerbation of chronic bronchitis, and was treated with supplemental potassium and a nicotine patch, with renewal of her prescription medications. (Tr. 19, 383-94) There is no error in this treatment of the evidence, nor in the ALJ's consideration of plaintiff's use of a wheelchair at the time of her hearing. While plaintiff testified that the wheelchair had been prescribed following her stroke in December 2008 (Tr. 28), the ALJ found no evidence that plaintiff in fact had suffered a stroke, and there is no record evidence of any medical need for plaintiff to remain confined in a wheelchair for any length of time.

Finally, plaintiff's brief is focused, in part, upon the ALJ's failure to specifically address periodic notations in the medical evidence of plaintiff's muscle spasms, elevated blood pressure readings, panic attacks, back and neck pain, headaches, and trigger point injections. (Docket Entry No. 18 at 7-8) However,

> Binding legal precedent instructs that an ALJ is not required to discuss every piece of evidence contained in the record. *See Simons v. Barnhart, 114 Fed. Appx. 727, 733 (6th Cir.2004).* "Although required to develop the record fully and fairly, an ALJ is not required to discuss all the evidence submitted, and an ALJ's failure to cite specific evidence does not indicate that it was not considered." *Id.* Just as an ALJ's failure to mention certain findings, alone, is not evidence that the omitted findings were not considered, such an omission is also not evidence of error. The appropriate test is whether the ALJ's credibility determination is supported by substantial evidence, not whether the ALJ has robotically referenced every medical finding in the record. If the ALJ's decision to discount Garland's credibility is supported by substantial evidence, it must be given deference. *See Her, 203 F.3d at 389-90.*

Garland v. Comm'r of Soc. Sec., 2010 WL 3087464, at *6 (N.D.Ohio Aug.6, 2010).

In this case, the ALJ's credibility determination is well supported. The ALJ's rationale in support of her credibility finding is as follows:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause some of the claimant's reported symptoms. However her allegations of spinal sclerosis, spinal stenosis, and statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment. Additionally, there is little to no follow up of the claimant's hospitalization in December for pneumonia, except to note that she continues to smoke against medical advice.
>
> Additionally, the reported thefts of her medications from two prescribing physicians on two occasions within a five month period, together with her requests for early refills, are troubling with respect to credibility. And while the references are suggestive of doctor shopping and drug seeking conduct, absent a diagnosis of substance abuse the undersigned does not so find. So are her disparate reports of her educational level, and her testimony with respect to having had a stroke. And while the claimant reported applying for disability based on spinal sclerosis, the undersigned finds no indication in the current record that the claimant has reported neurological symptoms generally associated with sclerosis; no indication she was tested for spinal cord or brain lesions; and no physician-observed ataxia or paralysis. Finally, while she has sought treatment for pain, the objective signs and findings of MRI and X-ray do not document a level of severity generally associated with the degree of pain alleged.

(Tr. 19) The ALJ elsewhere recounted plaintiff's report of daily activities to the consultative psychological examiner, who "noted that the claimant operates her own household and has complete care of her son, does housework, takes laundry to a Laundromat weekly, does her own grocery shopping, cooks twice daily for her 14-year-old son, shops, drives, manages her own finances, and reads for enjoyment." (Tr. 18, 273) Taking note of factors related to plaintiff's pure credibility as a witness, as well as the regulatory factors appropriate for consideration relative to plaintiff's subjective pain complaints, 20 C.F.R. §§ 404.1529, 416.929, the ALJ appropriately found that plaintiff's poor credibility undermined her claim

14

to benefits.  This finding is supported by substantial evidence and deserving of deference. See Jones v. Comm'r of Soc. Sec., 336 F.3d 469, 476 (6th Cir. 2003).

## IV. Recommendation

In light of the foregoing, the Magistrate Judge recommends that plaintiff's motion for judgment on the administrative record be DENIED, and that the decision of the SSA be AFFIRMED.

Any party has fourteen (14) days from receipt of this Report and Recommendation in which to file any written objections to it with the District Court.  Any party opposing said objections shall have fourteen (14) days from receipt of any objections filed in which to file any responses to said objections.  Failure to file specific objections within fourteen (14) days of receipt of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation.  Thomas v. Arn, 474 U.S. 140 (1985); Cowherd v. Million, 380 F.3d 909, 912 (6th Cir. 2004)(en banc).

ENTERED this 29th day of September, 2011.

    s/ John S. Bryant
JOHN S. BRYANT
UNITED STATES MAGISTRATE JUDGE